## CIRCUIT COURT OF PULASKI COUNTY

Stephen M. Epperly

v.

E. L. Booker, Warden

August 12, 1986

By JUDGE DUANE E. MINK

I have considered the pleadings filed in this cause, as ultimately amended as hereinafter set forth, evidence presented before me on July 16, 1986, the criminal proceedings out of which this action arose, conducted before the Circuit Court of Pulaski County, beginning December 8, 1980, as well as all preliminary matters prior thereto, oral arguments of counsel, and finally, the written memorandums and motions filed subsequent to the plenary hearing in this Court.

The first order of business to be addressed by this Court will be the adjudication of the clarification of petitioner's Paragraph 14, amendments relative thereto, and additional grounds stated at bar.

The Court will first consider the petitioner's amendment and clarification of Paragraph 14 of his Habeas Corpus Petition. The Court will accept the proposed amendment to said paragraph, and clarification thereof to read as follows:

C. The prosecution either knowingly used the perjured testimony of John Preston, or it suppressed evidence that would have materially aided the defense in negating or challenging the reliability of the testimony of John Preston.

In permitting this amendment, the Court is of the opinion that the respondent was fully aware of the thrust of the foregoing allegation. The Court does recall that there was a short informal conference between the attorneys for the parties immediately proceeding the trial, at which time counsel for petitioner indicated that there were three issues remaining in the case, and briefly stated those issues. We do not have to rely upon the informal recitation because those issues were again clearly stated into the record, without objection from the respondent. The issue, as stated verbally in open court, is in conformity with the foregoing clarification as submitted by counsel for the petitioner. Accordingly, the Court orders that the formal amendment and clarification be filed and accepted as Paragraph "14 C."

In addition, petitioner has moved the Court for permission to add Paragraph 14 D to read as follows:

> D. The prosecutor denied the petitioner due process when he instructed witnesses not to speak with defense counsel prior to trial.

The Court is of the opinion that leave to amend should be liberally granted in the furtherance of the ends of justice. Although counsel for respondent noted an objection orally before the Court at the plenary hearing, counsel briefed this issue and has not pursued that objection. Therefore, the Court will likewise grant the petitioner's motion to amend his petition by adding Paragraph "14 D."

In accordance with the foregoing ruling, the petitioner's Paragraph 14 will now be amended to reflect that there are four issues or grounds upon which he is seeking relief in this action. Accordingly, Paragraph 14, and its subparagraphs, shall now be stated as follows:

Paragraph 14.

A. The evidence was insufficient to support a conviction for first degree murder.

B. Counsel were ineffective in representing petitioner at trial.

C. The prosecution either knowingly used the perjured testimony of John Preston, or it suppressed evidence that would have materially aided the defense in negating or challenging the reliability of the testimony of John Preston.

D. The prosecutor denied the petitioner due process when he instructed witnesses not to speak with defense counsel prior to trial.

The Court will consider each of the foregoing allegations in the order set forth above.

In connection with the allegation that the evidence was insufficient to support a conviction for first degree murder, the Court finds that the petitioner raised the issue of the sufficiency of the evidence on direct appeal and the Virginia Supreme Court resolved that issue against him. There having been no changes in circumstances affecting this issue, the Court concludes that it is bound by the previous determination of the Virginia Supreme Court on this issue. See *Hawks v. Cox*, 211 Va. 91 (1970). The Court would further note that the petitioner has conceded on the record that this issue was raised on direct appeal and was resolved adversely to him by the Virginia Supreme Court. See *Epperly v. Commonwealth*, 224 Va. 214 (1982).

In connection with the allegation that counsel were ineffective in representing the petitioner at trial, the Court will consider each of the claims summarized by the petitioner in its memorandum in respect to the foregoing claim. Counsel for petitioner first claims that counsel failed to proffer a single document, call a single witness, or produce any evidence concerning the extent to which pre-trial publicity made it impossible for him to receive a fair trial in Pulaski County. In this respect, the Court finds that counsel for defendant did, in fact, make an appropriate motion for change of venue. Irrespective of the fact that there were no copies of news articles, transcripts of radio and television broadcasts, nor affidavits in support of their petition, the Court finds that the uncontradicted evidence of trial counsel supported their contention that they were in fact ready, willing and able to submit such evidence at the convenience of the trial judge. This motion was received and acted upon by the trial court on November 17, 1980. The record reflects that the highly skilled and learned trial judge, after having had an off the record discussion concerning the three motions in limine being taken up on that occasion, announced for the record that he had ruled that the appropriate procedure would be to undertake to empanel a Pulaski County jury on the opening day set for trial, which was December 8, 1980, and should it be determined

that after a bona fide effort was made to empanel a jury, free from exception, then should they fail in that effort the Court would proceed to rule on the motion for a change in venue. Thus, the same was taken under advisement pending an effort to obtain a Pulaski County jury which was free from exception. The Court finds that the efforts of trial counsel, Warburton and Lookabill, was not deficient in this respect. In the case of *Coppola v. Commonwealth*, 220 Va. 243 at 247 (1979), it appears that counsel for Coppola filed all of the things suggested by counsel for the petitioner, i.e. copies of news articles, transcripts of radio and television broadcasts in an effort to show that because of prejudicial media coverage he could not receive a fair and impartial trial in Newport News. Irrespective of the fact that such evidence was presented, the Supreme Court held that the motion for change of venire or venue should be addressed to the sound discretion of the trial judge. The Court specifically stated that "A court may refuse to summon a jury from another county until an ineffectual effort has been made to obtain an impartial jury from the county in which the trial is to take place. (Page 240)" The Supreme Court noted that prospective jurors were examined on voir dire, collectively by the Court and individually by counsel, and found that there was no evidence in the record of that case, and on the voir dire examination of any widespread prejudice against Coppola which would prevent his receiving a fair and impartial trial.

In this case it was entirely appropriate to withhold ruling on the motion for change of venue or venire until such time as an appropriate voir dire was conducted by the trial judge, the Commonwealth's Attorney and counsel for the defendant, Epperly, at the conclusion of which a jury panel of 20 members and four alternates were selected free of exception.

Counsel for petitioner argues that defense counsel's failure to make a record was devastating. The Court finds again that such was not the case. Once a panel was selected which was free from exception, the motion for change of venue was appropriately not renewed because it was in fact moot and would have been frivolous and unsupported by the voir dire.

Although the undersigned has made the foregoing findings of facts and observations concerning the allegation of the petitioner and the proceedings of the trial

court, the Court is of the further opinion that the Supreme Court has already ruled on the issue concerning the change of venue, and this Court has no authority to overturn a decision of the Virginia Supreme Court. See *Epperly v. Commonwealth*, 224 Va. at 234.

The second claim advanced by the petitioner relative to ineffective representation involved the question of whether John Preston's testimony was credible, whether there might be ways of attacking Preston's testimony, or whether other experts believe that the tracking was possible, and that counsel failed to produce any witness to contradict, impeach or challenge Preston's testimony.

Prior to going forward with the analysis of each of the claims advanced by the petitioner, it behooves the Court to discuss in some degree the law which prevails in cases involving a petition for a writ of habeas corpus. The Court would note that both parties to this proceeding agree that the case of *Strickland v. Washington*, 104 S.Ct. 2052 (1984), establishes the standard to test the effective assistance of counsel claims. Likewise, the parties agree that there is a two pronged approach to assessing ineffective assistance of counsel claims. First, a defendant must show that counsel's performance was deficient, which means that it fell below a standard of reasonable performance. Second, the defendant must show that he was prejudiced, which means that counsel's failure undermined confidence in the verdict. That is, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is probability sufficient to undermine confidence in the outcome.

In addition to the foregoing two pronged approach to assessing ineffective assistance of counsel claims, the U.S. Supreme Court in its foregoing decision, went further and stated as follows:

> Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional

judgment The Court must then determine whether, in light of all the circumstances, the identified acts or omissions are outside the range of professional competent assistance. In making that determination, the Court should keep in mind that counsel's function, as elaborated in the prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the Court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

In order to test the assertions of the petitioner that there was ineffective assistance of counsel, the Court has considered the evidence presented at the plenary habeas corpus hearing, as well as the record created in the case of *Commonwealth v. Stephen Matteson Epperly.* In this regard, the record reflects that counsel was appointed on September 9, 1980. Written motions for discovery of Commonwealth's evidence was filed in less than a week thereafter, and following a hearing thereon the Court entered an order permitting appropriate discovery pursuant to Rule 3A:14 of the Rules of Court, said order being duly entered on the 17th day of September, 1980. Within one additional week counsel again filed a motion for the entry of an order permitting defense counsel to interview witnesses, the motion being filed on September 24, 1980, argued on September 29, 1980, with the evidence being presented with reference thereto, and duly reduced to an order on the 1st day of October, 1980. Thereafter, counsel for the Commonwealth appealed that order by seeking a writ of prohibition, which was granted on the 24th day of October, 1980, by the Supreme Court of Virginia. This, by necessity, required research and argument before the Supreme Court within the aforesaid 23 day period. Routinely, matters were being filed with the Court, records such as certificates of analysis, bonding information, witness subpoenas, and again, on November 17, 1980, a motion in limine pertaining to three issues, the exclusion of polygraph results, exclusion of dog trainer's evidence, and change of venue. Thereafter, further efforts were made concerning bond information and letting defendant to bail. Earlier efforts pertaining to the reduction

of the amount of the bond had been unfruitful. Thereafter, trial preparations appeared to develop routinely toward trial on December 8, 1980, including further information concerning property values, et cetera, ultimately resulting in the defendant's bond being revoked on November 24, 1980. Evidentiary matters were made available from time to time by the Commonwealth, and being filed with the court records, such as laboratory reports, analyses from the Forensic Science, and other exhibits being discussed between counsel for the parties. Obviously, the trial was and had been occupying the full time and efforts of both of these young attorneys, faced as they were with the concept of a speedy trial which was obviously for the benefit of their client who had remained incarcerated for a period of 67 days following his arrest until the entry of the final order on the 19th day of December, 1980. It can be stated unequivocally and without reserve, that this was a unique case in many respects and defense counsel's time would have to have been channeled in several directions in order to be aware of the various contingencies. Although the specter of John Preston's testimony was unique and a question of first impression in the Commonwealth of Virginia, it was not the sole unique question facing defense counsel. There is likewise uniqueness in the question of whether or not the corpus delecti could be proven solely by circumstantial evidence, coupled with the question of whether or not circumstantial evidence could likewise be sufficient to prove that there was premeditation and deliberation so as to elevate homicide to first degree murder. All of these questions were thought provoking and time consuming, to say the least.

Within this context, the Court must judge whether or not the efforts undertaken by defense counsel were reasonable under the circumstances. Insofar as those efforts pertain to the claim of the petitioner that a reasonable effort was not made to challenge the testimony of John Preston will first be considered by the Court. Admittedly, the attorneys were not familiar with the capability of tracking dogs. However, one of the attorneys was assigned the duty of undertaking to ascertain those capabilities, and whether or not witnesses were available to impeach or challenge the testimony of Preston. Had the attorneys been able to obtain the services of expert witnesses, it would not have rendered the evidence of John Preston inadmissible. The evidence before the Court,

even at this late date, simply reveals that there is a field of expertise of training animals to track scents, and in this case, human scents. The experts likewise agree that reasonable periods of delay do not affect the capability of the scenting animal to follow such a scent. The question then becomes whether or not a delay of ten days under varying weather conditions is sufficient to render the testimony unbelievable. Even the current expert for the petitioner admits that he has tried to track after a delay of a few days. Again, it is an accepted fact that dogs are capable of tracking such scents, and while the petitioner's expert places a three day old track limitation, others, such as Mr. Bobby Mutter, establish a much longer period. Therefore, the Court is of the opinion that reasonable efforts were made prior to trial to ascertain the evidence of John Preston, to assess the validity of his expected testimony and to seek expert advice and assistance at the trial, albeit, those efforts failed to turn up an expert who would appear and testify at the trial. Having made a reasonable effort prior to trial, the Court is not convinced that it was incumbent upon the trial attorneys to attempt to obtain a continuance in the middle of the trial after the trial judge had ruled the evidence was admissible. It is highly problematical that such motion would have been granted since there was no indication that impeaching evidence was available from any source at that time. In fact, it is highly improbable that any trial judge would grant such a motion when the most that could be said for impeaching an expert witness would be that there is a disagreement by the experts as to what period of time would constitute an excessive delay prior to undertaking a tracking effort. Secondly, as a tactical decision, the attorneys were of the opinion that they had successfully attacked the credibility of the witness through their efforts of cross-examination. Having made that tactical decision, there was no need to seek out a contingency such as making a motion to continue the case.

The third claim made on behalf of the petitioner is that counsel failed to seek judicial assistance when they learned the prosecutor was acting unethically and unconstitutionally in instructing the witnesses not to talk with the defense. Insofar as this assertion relates to ineffective representation of counsel, the Court is of the opinion that petitioner has not borne his burden

of proving a claim by a preponderance of the evidence. There is no doubt that upon some occasion Mr. Shockley did in fact instruct his witnesses not to talk to defense attorneys. This issue was pursued vigorously before the trial court, apparently as soon as counsel ascertained that the situation existed in September 1980. I have previously made note of the fact that on September 24, 1980, approximately 15 days after counsel was appointed to represent the defendant, they made a motion for the entry of an order to permit defense counsel to interview the witnesses. This was granted pursuant to an order entered on October 1, 1980, and partially set aside pursuant to a writ of prohibition issued by the Supreme Court of Virginia on October 24, 1980. This Court is uncertain from the evidence whether or not such instructions still prevailed after the actions of the trial court and the action of the Supreme Court. In any event, the actions of the prosecutor were known to the petitioner personally inasmuch as he was present at all pre-trial hearings and motions. He personally knew that a record had been made at the September 29 hearing, and a record had been made in connection with the application for the writ of prohibition. The Court finds that the petitioner has waived his right to rely upon this allegation inasmuch as it surfaced as early as September 1980 and was not raised on appeal. In addition, the State Supreme Court has already partially considered the question concerning this issue when it entered the writ of prohibition and this court is bound by this ruling. In consideration of all of which, this Court would hold that the petitioner has failed to prove this allegation as required by law.

In addition to the foregoing holding, the Court further finds that the petitioner suffered no prejudice as a result of the alleged interference with his right to speak to witnesses. Attorneys for the petitioner indicated that they were not surprised by any evidence presented in the trial of the case, with the exception of three statements attributable to their client, which apparently had been made to witnesses other than law enforcement officers. At the plenary hearing Mr. Warburton could recall only one of the surprising statements and that came from Bill Cranwell. There was no indication before the Court that indicated the Commonwealth had directed Mr. Cranwell not to talk with the defense attorneys. Had the defendant advised his attorney about the conversa-

tion they could have interviewed Mr. Cranwell, as they did other lay witnesses.

Petitioner apparently abandoned his claim that witnesses were not called on his behalf. Specifically, in reference to Jerry Ross, the Court finds that Ross was interviewed by counsel, Warburton, and a tactical decision was made by counsel not to call Ross as a witness. Likewise, it is uncontradicted that Dreama Ayers was unavailable to be interviewed or called as a witness. Although Epperly testified only on one point concerning his presence at the boat dock, he did not testify or contradict defense counsel's testimony that there was never any request to call Bill Cranwell as a witness, nor was there any reference, or was there any conversation to them concerning the fact that Cranwell could place the defendant at the boat dock some time between the disappearance of Gina Renee Hall and the 10th of July, when the tracking occurred. Therefore, the Court holds there is no merit to the claim that witnesses were not called on behalf of the defendant.

In consideration of all the foregoing, the Court denies petitioner's claim that he was denied effective assistance of counsel. On the contrary, this Court is of the opinion, for the same opinion expressed by Judge Arthur, as well as the Supreme Court of Virginia, that counsel for the defendant had given the petitioner "an energetic and effective representation."

The third ground for relief stated by Mr. Epperly is that the prosecution either knowingly used the perjured testimony of John Preston, or it suppressed evidence that would have materially aided the defense in negating or challenging the reliability of the testimony of John Preston. It appears to the Court that at all times, with the exception of immediately preceding the plenary hearing on July 16, 1986, it was the position of the petitioner that he could show that John Preston used perjured testimony, and that at least one government officer working on the case knew that it was perjured, further alleging that John Preston's evidence was not the truth and that he conducted what appeared to be a search only with the assistance of at least one government officer. Although the evidence seems to show that there are some incomplete responses, and possible minor inconsistencies in the qualifying stage of the examination of Mr. Preston, which may weigh to some degree on his credibility, such evidence

would not be sufficient to exclude his evidence from the triers of fact, and would wholly and completely fall short of sustaining the charge that the petitioner's conviction rests upon perjured or false testimony. There is likewise absolutely no evidence that any prosecuting officer or agent of the Commonwealth knowingly used false evidence to bring about the conviction. In view of the petitioner's memorandum in support of the petitioner's current position, the petitioner appears to no longer be relying upon his contention that there was perjured testimony involved in the trial of his case. As indicated, the foregoing is not now the thrust of the petitioner's position concerning this issue. It now appears that the thrust of the petitioner's claim is that the prosecution suppressed material evidence and that John Preston instructed the Commonwealth's Attorney to do two things in order to avoid contaminating the tracking. First, to insure that no person involved in the investigation of the missing girl retrieve the scenting object, and second, to see that the object was placed in a secure container. If these instructions were in fact given to Mr. Shockley, a greater effort could have been made to ascertain that these instructions were not violated.

The Court holds that the petitioner has failed to sustain his burden of proof that the prosecution suppressed material evidence. The most that can be said about Preston's testimony in regard to preservation of the scenting object is that in most cases he does instruct the parties to insure that no person involved in the investigation retrieves the scenting object and that the object be placed in a secure container. He cannot say that in this particular case that he gave such instructions to Mr. Shockley, and Mr. Shockley, on the other hand, says that he cannot recall any such instructions. Assuming, however, for the purpose of argument, that such instructions were given, the Court would hold that petitioner has failed to establish that not only was the evidence not suppressed, but it cannot show that such evidence alleged to have been suppressed was material as required by *United States v. Bagley*, 105 S.Ct. 3375 (1985). This is especially true in view of the fact that Officer Williams was available at the trial and subject to cross-examination. In fact, Officer Williams testified on December 11, 1980, as the last witness on that particular date, and the first witness on the morning of December 12, 1980. The

testimony by Officer Williams indicated that he was heavily involved in the investigation, that he did retrieve the scent article and turned it over to John Preston about midnight. In this connection, he testified that the scent article was picked up around 2:00 to 3:00 in the afternoon and then turned over to John Preston about midnight. In fact, Officer Williams's testimony was begun on the afternoon of December 11, continued on the morning of December 12, interrupted for a brief period with other witnesses, and at the close of the morning's evidence on December 12, Officer Williams was recalled for the sole purpose of explaining where and when the scent article was obtained and when it was turned over to Mr. Preston. Immediately after lunch, examination of Mr. Preston began. Therefore, given the uncertainty about the actual instruction of Mr. Preston to Mr. Shockley, and the awareness that Officer Williams obtained the scent article, the Court is of the opinion that there has been no suppression of evidence in the Commonwealth. To rule otherwise, it would require the Commonwealth's Attorney to completely analyze every single act that is undertaken on behalf of the Commonwealth, and analyze whether or not such action or inaction could in any way assist the defendant in his efforts to cross-examine a witness. This would constitute an intolerable burden that the law does not cast upon the Commonwealth. The petitioner has relied heavily upon the requirement set forth in *United States v. Bagley*, 105 S.Ct. 3375 (1985). There is a second test to be applied to the alleged suppressed evidence, and that is the test of materiality. That test of materiality was likewise defined in the *Strickland* case, wherein the issue of materiality was defined as follows:

> Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. 105 S.Ct. 3375 at 3383.

There is no evidence that Captain Williams ever touched the scent article, only that the article was placed in a paper bag which he did handle, but nevertheless, there is no evidence that he ever actually touched

the article itself. Further, the evidence before the Court simply reflects that greater precaution should have been taken to prevent contamination, it does not necessarily nullify the result. Preston's evidence was that he would rather have had another article, but it was not absolutely necessary, especially in view of the fact that the tracking dog did not turn to Captain Williams, who was in the vicinity of the track. I realize that it is the petitioner's position that Ron Allen was of the opinion that Preston's dog might well have tracked Williams rather than any suspect. Even if one assumes that that position is well taken, it would only explain a small portion of the actual track indicated by Mr. Preston. The track testified to by Mr. Preston before the jury, and as related to this Court in this hearing, was much greater and lengthier than any area which was traversed by Officer Williams prior to the tracking date. There is no evidence before the Court that Officer Williams traversed the area indicated by Mr. Preston in his testimony. It is true that he was in a portion of the area actually tracked, but only a limited portion thereof. Nothing further can be surmised from the evidence.

The last claim being advanced on behalf of Mr. Epperly is that the prosecutor denied the petitioner due process when he instructed witnesses not to speak with defense counsel prior to trial.

The Court has addressed this issue in its comments relating to petitioner's claim of ineffective assistance of counsel, and the Court would deny relief upon this claim for the same reasons stated in this opinion regarding petitioner's request for relief under Paragraph 14 B. (See Pages 8 and 9.)

In conclusion, the Court does hereby deny the petitioner's Petition for Writ of Habeas Corpus. The Court is of the opinion that the defendant was awarded a fair and impartial trial, that he was effectively and energetically defended by his court appointed attorneys, that there was no perjured testimony, that evidence was not suppressed, and the Court has found no evidence to undermine confidence in the outcome of the trial. In actuality, the petitioner has attempted to attack only one piece of the Commonwealth's evidence. The record is replete with other strong circumstantial evidence which would insulate the integrity of that verdict from an attack upon only one isolated piece of evidence, and the elimina-

tion of that evidence altogether would not indicate with a reasonable probability that the result of the proceedings would have been different.